**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EMMA MILLER,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:14-1301** |
| | : | |
| **v.** | : | |
| | : | **(MANNION, D.J.)** |
| **CAROLYN W. COLVIN,** | | **(SCHWAB, M.J.)** |
| **Acting Commissioner** | : | |
| **of the Social Security** | | |
| **Administration,** | : | |
| | : | |
| **Defendant** | : | |

**M E M O R A N D U M**

Pending before the court is the report and recommendation of Judge

Schwab, (Doc. 16), recommending that plaintiff's appeal from the final

decision of the Commissioner of Social Security be denied, and that the

decision of the Commissioner be affirmed. Judge Schwab reviewed the record

in this case pursuant to 42 U.S.C. §405(g) to determine whether there is

substantial evidence to support the Commissioner's decision denying the

plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social

Security Act, ("Act"). 42 U.S.C. §§401-433, 1381-1383f. The plaintiff, Emma

Miller, has filed objections.[1] (Doc. 17). The defendant responded to plaintiff's

objections. (Doc. 18). For the following reasons, the report and

---

[1]Plaintiff is represented by counsel in this case. The court notes that since Judge Schwab stated the full procedural history of this case, (Doc. 16, at 2-3), and since plaintiff did not object to it, the court will not repeat it herein.

recommendation is **ADOPTED** and plaintiff's appeal of the decision of the defendant Commissioner will be **DENIED**.

## I.    STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1)*; Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (*citing United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also *Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (*citing Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C.

§636(b)(1); Local Rule 72.31.

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)*; Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988)*; Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999)*, Johnson*, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla*. Richardson v. Perales*, 402 U.S. 389, 401 (1971). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but

3

cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

## II.   RELEVANT MEDICAL EVIDENCE

Judge Schwab's report and recommendation ("R&R") contains a thorough review of the plaintiff's medical history as well as the briefs of the parties. The plaintiff did not file any objection to Judge Schwab's factual determinations regarding her medical history, so they will be adopted. *See* Butterfield v. Astrue, 2010 WL 4027768, *3 (E.D.Pa. Oct. 14, 2010) ("To obtain *de novo* determination of a magistrate[ ] [Judge's] findings by a district court, 28 U.S.C. §636(b)(1) requires both timely and specific objections to the report.") (quoting Goney v. Clark, 749 F.2d 5, 6 (3d Cir.1984)). The court will restrict its discussion below to the relevant medical background as it pertains to the plaintiff's objections. Also, since the five-step legal framework for addressing a disability claim was properly stated in the R&R, (Doc. 16, at 3-5),

4

as well as the finding of the ALJ at each step, (Doc. 16, at 8), the court incorporates by reference these portions of the R&R.

## III.   DISCUSSION

The plaintiff raises five objections to the R&R claiming that errors were made regarding the following findings of Judge Schwab: (1) the finding that the Administrative Law Judge ("ALJ") properly determined that plaintiff's multiple impairments were non-severe; (2) the finding that the ALJ properly relied on the testimony of the vocational expert ("VE"); (3) the finding that the ALJ's decision that plaintiff did not meet Listing 12.04 for affective disorder was supported by substantial evidence; (4) the finding that the ALJ properly evaluated plaintiff's treating and examining physicians; and (5) the finding that the ALJ properly evaluated plaintiff's credibility. These five issues are essentially identical to the five issues plaintiff raised in her initial appeal regarding the decision of the ALJ denying her DIB claim that were addressed in the R&R. (Doc. 16, at 10-11). The court will now address plaintiff's objections.

### A.   Whether the ALJ Erred in Finding that Plaintiff's Multiple Impairments were Non-Severe

The ALJ found at step two that plaintiff's impairments of asthma,

degenerative joint disease of the right knee and sleep disturbance were medically determinable but non-severe. Judge Schwab found in her R&R that even if the ALJ erred at step two by failing to find plaintiff's stated impairments were severe, his error is harmless since "the ALJ adequately accounted for the limitations caused by each of these non-severe impairments in his RFC assessment." (Doc. 16, at 13). Plaintiff takes issue with this finding and contends that her right knee impairment and sleep disturbance are [severe and] significant enough to affect her ability to do basic work activities." (Doc. 17, at 3). Plaintiff also states that Judge Schwab failed to explain how the ALJ accounted for the limitations caused by her impairments that were found to be non-severe, in his RFC assessment. (TR. 98). Defendant Commissioner responds that plaintiff failed to meet her burden to show that her right knee impairment and sleep apnea were severe medically determinable impairments that significantly limited her ability to do basic work activities. (Doc. 18, at 2).

In Sheehan v. Astrue, 2013 WL 1148351, *6 (E.D.Pa. Feb. 28, 2013), adopted by 2013 WL 1155294 (E.D.Pa. Mar. 20, 2013), the court discussed step two and stated:

> Under the regulations at step two, a claimant has a severe impairment if he has "any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities." FN5

20 C.F.R. §404.1520(c)."By contrast, a non-severe impairment has 'no more than a minimal effect' on the individual's ability to perform basic work activities." See Woodson, 2004 WL 1102363, at *6 (quoting SSR 85–28, 1985 WL 5685, at *3).

FN5. The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." Woodson v. Barnhart, 2004 WL 1102363, *6 (E.D.Pa. May 11, 2004) (quoting 20 C.F.R. §416.921(b)); see 20 C.F.R. §404.1521. Examples of basic work activities include, *inter alia*, mental functions such as: understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §404.1521(b).

The Third Circuit has stated that although the substantial evidence standard applies at step two of the sequential evaluation, "[t]he burden placed on an applicant at step two is not an exacting one." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004); see Mason v. Barnhart, 2004 WL 3019319, *1 (E.D.Pa. Dec.28, 2004). The Court of Appeals explained: "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond a slight abnormality or a combination of abnormalities which would have no more than a minimal effect on an individual's ability to work." McCrea, 370 F.3d at 360; see Mason, 2004 WL 3019319, at *1.

Thus, "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." Id. "Reasonable doubts on severity are to be resolved in favor of the claimant." Id.

*See also* Watson v. Astrue, 2012 WL 406374, *7 (E.D.Pa. Jan. 19, 2012) ("It

is settled that the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.'" (citing Bailey v. Sullivan, 885 F.2d 52, 59–61 (3d Cir.1989); 42 U.S.C. §423(d)(2)(B); 20 C.F.R. §§ 404.1523, 416.923; and Social Security Ruling 96–8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' ")).

Plaintiff points out that Judge Schwab erred by only referring to her medical records from May of 2012 regarding her sleep disturbance in which she was diagnosed with only mild sleep apnea. Plaintiff states that the R&R failed to consider her more recent record of March 13, 2013, from Pennsylvania State Hershey Sleep Disorders Clinic in which the doctor noted that her "daytime tiredness and sleepiness has been persistent, had not improved." Plaintiff indicates that the doctor at the clinic diagnosed her with obstructive sleep apnea and recommended CPAP titration. (Doc. 17, at 10) (citing TR. 77-78).[2]

The record of March 13, 2013, was after the ALJ's February 1, 2013 decision. The relevant time for this case is March 6, 2009, alleged onset date

---

[2]"TR." refers to the SSA transcript found at Doc. 10.

through February 1, 2013, date of ALJ decision.[3] Also, this record was not submitted to the ALJ. When plaintiff requested review of the ALJ's decision by the Appeals Council she submitted medical records that were not considered by the ALJ, including the  record of March 13, 2013. The Appeals Council considered the additional evidence provided by plaintiff and her request for review was denied on May 13, 2014. The Appeal Council found that plaintiff's new information was outside of the relevant time period of this case and advised plaintiff that she had to make a new application for DIB if she was claiming she was disabled after February 1, 2013.  (TR. 1-5, 7-86 & 716-740). To be considered as new evidence, the records must be material and within the relevant time period.

In Shuter v. Asture, 537 F.Supp.2d 752, 757 (E.D.Pa. 2008), the court explained:

> Evidence is material if it is "relevant and probative" and there is a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." [Szubak v. Sec'y of HHS, 745 F.2d 831, 833 (3d Cir.1984)]. Importantly, the evidence must relate to the time period for which benefits were denied and "must not

---

[3]Plaintiff was 48 years old at the time of her alleged onset date, and she was 52 at the time of the ALJ hearing. Under the regulations, plaintiff was a person "closely approaching advanced age" and, thus, her age along with her serious impairments may be found to seriously affect her ability to adjust to other work in certain circumstances. 20 C.F.R. §404.1563(d).

concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Id. A plaintiff only need demonstrate that there is a reasonable possibility that the ALJ would have come to a different conclusion, an arguably lax standard. See Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir.1985) (holding that the burden of showing materiality, namely the reasonable possibility standard, is not great). The *Newhouse* Court also held that the standard, "while requiring more than a minimal showing, need not meet a preponderance test." Id.

Thus, the Appeals Council and the R&R properly did not consider plaintiff's record of March 13, 2013, from Pennsylvania State Hershey Sleep Disorders Clinic, since it was dated after the ALJ's decision and it pertained to plaintiff's condition outside of the relevant time of this case.

Based on the record, the ALJ did not err in step two and properly considered plaintiff's degenerative joint disease of her right knee and her sleep disturbance as non-severe impairments. Defendant correctly states, (Doc. 18, at 2), that plaintiff has the burden of proof to demonstrate that her right knee impairment and sleep apnea are "severe medically determinable impairments that significantly limit her ability to do basic work activities." (citing 20 C.F.R. §404.1521(a)). Defendant also correctly points out, (Id., at 2-3), that the "regulations provide that a non-severe physical impairment is one that does not significantly limit a claimant's ability to do basic work

10

activities, including physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." (citing 20 C.F.R. §§404.1520(c), 404.1521).

In light of the record and the above case law, the court finds that the ALJ properly determined that plaintiff's impairments of degenerative joint disease of her right knee and her sleep disturbance were non-severe under the regulations and did not limit her ability to do basic work activities. Plaintiff's knee appeared "good" and she was doing "well". The injections in her knee were effective in reducing her pain. (TR 623-624, 643, 693). Also, plaintiff had to climb steps for her second floor residence and she could drive. (TR 117-120). With respect to her sleep apnea, a sleep study in May of 2012 revealed that it was only mild. In fact, plaintiff was able to sleep for 480 minutes, the equivalent to eight hours of sleep. (TR 642). Additionally, there is nothing in the record to suggest that either plaintiff's knee impairment or her sleep apnea significantly limited her ability to do basic work activities, including physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling. *See* 20 C.F.R. §§404.1520(c).

Moreover, as the R&R correctly points out, (Doc. 16, at 13), as well as defendant's response to plaintiff's objections, (Doc. 18, at 4), assuming

11

*arguendo* that the ALJ erred at step two in his finding that plaintiff's impairments of degenerative joint disease of her right knee and her sleep disturbance were not severe, this error alone did not render his decision defective since he found three other conditions of plaintiff were severe. *See* Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2006) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)). The R&R and defendant's response also correctly state that "the regulations contemplate that, in assessing a claimant's RFC prior to step four, the ALJ considers the symptoms of all medically determinable impairments, whether they are found severe or non-severe at step two." (Doc. 16, at 13) (citing 20 C.F.R. §404.1545). (Doc. 18, at 4-5).

In her objections, (Doc. 17, at 3), plaintiff not only states that the ALJ erred by failing to consider her impairments of degenerative joint disease of her right knee and her sleep disturbance as severe, she also states that the ALJ failed to account for the limitations caused by these two impairments in his RFC. The court finds that the ALJ fully considered the combined effect of all of plaintiff's impairments, severe and non-severe, in assessing her RFC.[4]

---

[4]Insofar as both the R&R and defendant, (Doc. 18, at 4 n. 1), note that plaintiff should be deemed as waiving her present argument in her objections that the ALJ failed to consider her impairments which he found to be non-

As mentioned, the ALJ found that plaintiff had the RFC to perform light work with restrictions as detailed in the R&R. (Doc. 16, at 7). The limitations which the ALJ included in his RFC assessment were that plaintiff must be allowed to alternate positions between sitting and standing every hour and that she be limited to only occasional bending, stooping, and stair climbing, and not allowed to kneel, crouch and crawl. The ALJ also found that plaintiff's attention and concentration was limited to 85% of the workday. (TR. 98). Plaintiff states in her objections that her treatment note of July 11, 2012, within the relevant time period, noted that her multiple medications along with her mild sleep apnea with insomnia could lead to daytime tiredness and sleepiness. (Doc. 17, at 3) (TR. 641-42). Also, plaintiff reported that she dozed sometimes while driving. However, it is clear that the ALJ considered plaintiff's sleep disturbance in combination with her several medications and her insomnia since he properly limited her attention and concentration to only 85% of the workday.

Plaintiff also points to her follow up exam after her knee surgery dated February 12, 2013. (Doc. 17, at 3). After her right knee arthroscopic surgery

---

severe in his RFC, the court agrees with them. *See* State Farm Mut. Auto. Ins. Co. v. Lincow, 715 F.Supp.2d 617, 630 (E.D.Pa. 2010) (citations omitted). Nonetheless, the court has considered this argument.

on May 24, 2012, and after attending physical therapy, plaintiff reported during the stated exam that her knee was "really giving her a lot of pain". Plaintiff also stated that her knee swelled everyday, and that it hurt when she walked and when she sat and lay down. Plaintiff reported that her knee pain definitely got worse with activity. The February 12, 2013, knee exam of plaintiff confirmed that she had swelling and that she had pain with palpation of her knee, especially on the lateral side. Plaintiff also had pain with motion of her knee. Plaintiff's treatment plan was to continue with therapy and re-examine her in a month. It was noted that if plaintiff was not doing better, she would have to either live with the pain or have it surgically corrected with knee joint replacement. (TR. 85). However, this record of the Orthopedic Institute of Pennsylvania was dated February 12, 2013, 11 days after the ALJ's decision, and outside the relevant time of this case. As such, the court will not consider this record since it is not material and not related to plaintiff's right knee condition during the relevant time period.

## B.     Whether the ALJ Erred in Finding that Plaintiff Did Not Meet or Equal a Listed Impairment

At step three of the evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial

14

gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; *Burnett v. Comm. of SSA*, 220 F.3d 112, 119 (3d Cir. 2000). The purpose of the listing of impairments is to describe those impairments which are "severe enough to prevent a person from doing any gainful activity," regardless of age, education, or work experience. 20 C.F.R. §416.925(a). As such, the Commissioner explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. Sullivan v. Zebley, 493 U.S. 521,  532 (1990). If a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled per se, and is awarded benefits.  20 C.F.R. §416.920(d); *Burnett*, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." *Sullivan*, 493 U.S. at 531; 20 C.F.R. §416.920(d).  An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Id.*

At step three, the ALJ concluded that plaintiff's physical and mental impairments, namely, status-post right cubital tunnel release, affective

disorder, and anxiety disorder, were severe but that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *See* 20 C.F.R. §§404.1520(d), 404.1525, and 404.1526. The ALJ considered Listing 12.04 for plaintiff's affective disorder. Here, plaintiff argues that Judge Schwab erred in finding substantial evidence supported the ALJ's determination that she does not suffer from a mental impairment that medically equals Listing 12.04. (Doc. 17, at 4-6).

Listing 12.04 has paragraphs "A", "B", and "C" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §12.04. To meet or equal Listing 12.04, the requirements of both "A" and "B" must be satisfied, or the requirements of "C" must be satisfied. The ALJ found that plaintiff did not satisfy the "B" criteria of Listing 12.04. (TR 96-97). Plaintiff contends that the ALJ erred by finding that she did not satisfy the "B" criteria since she claims the evidence shows she had marked restrictions in activities of daily living and in concentration, persistence, or pace.

To satisfy the paragraph "B" criteria, plaintiff's mental impairment must result in at least two of the following: marked restrictions in activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated

episodes of decompensation, each of an extended duration. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §12.04.

The court finds that substantial evidence supports the ALJ's determination that plaintiff had mild restrictions in activities of daily living. (TR 96). As defendant states: "The record shows that plaintiff cooks simple meals (Tr. 25, 283, 299), shops twice per month (Tr. 284), and cares for her personal needs without assistance (Tr. 282, 299). Plaintiff drives a car and goes out alone (Tr. 284). She also reads newspapers and religious books a couple of times per week (Tr. 99)." (Doc. 18, at 6). Dr. Alex Siegel also found that plaintiff had mild restrictions in activities of daily living. (TR 97, 150). Notwithstanding plaintiff's objection that Dr. DeLeo found she could not do her daily chores like cooking and cleaning, and that she was cared for by her children (TR 366, 441), the ALJ correctly pointed out that these restrictions dated back to 2007, and that they belie the fact that plaintiff indicated in June of 2011, that she was not ever fired or laid off from a job due to problems in getting along with other people. (TR 96-97). Further, Dr. Louis Laguna found in October of 2011, the plaintiff had only slight difficulty in interacting with co-workers, supervisors, the public, and only moderate difficulty in responding to usual work pressures. (Id.).

17

Plaintiff also objects to Judge Schwab's finding that substantial evidence supports the ALJ's finding that she only had moderate restrictions in maintaining concentration, persistence, or pace. Judge Schwab, (Doc. 16, at 20), stated that "plaintiff's mental functioning was observed to be 'intact' with normal processes by her treating physicians, she is able to read books and newspapers [TR 299], as of October 2012 plaintiff was able to manage her own finances [TR 310], and she was 'ok' to drive 'sometimes.' [TR 284]" The evidence also shows that plaintiff was oriented. (TR 97, 361).

Despite the fact that Dr. Laguna found plaintiff had some difficulty with concentration and inability to think abstractly, (TR 102, 517), Dr. Laguna concluded that plaintiff's ability to understand, remember, and carry out instructions was not affected by her mental impairment. (TR 512). Dr. Laguna also found that plaintiff had no difficulties in carrying out simple or complex instructions. (TR 97). Dr. Siegel, a non-examining psychologist, also opined that plaintiff only had moderate difficulties in maintaining concentration, persistence, or pace, and that plaintiff could understand, retain and follow simple job instruction. (TR 97). While plaintiff points out, (Doc. 17, at 6), that in Dr. DeLeo's May 4, 2011, medical source statement, he opined that she was "extremely depressed and cannot focus" (TR 441), and that she had

18

extreme difficulties in carrying out simple and complex instructions, as mentioned, these limitations existed since 2007, when plaintiff was working a full time job, and this evidence was properly discounted by the ALJ. (TR 97).

Based on the above, the court finds that substantial evidence supports the decision reached by the ALJ that the evidence did not show that plaintiff's mental impairment met Listing 12.04.

## C. Whether the ALJ Erred in Evaluating the Medical Opinion Evidence

In *Morales v. Apfel*, 225 F.3d 310, 315–316 (3d Cir.2000), the Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a physician stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [186 F.3d at 429] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir. 1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to

19

reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Kent*, 710 F.2d at 115.

The regulations provide that the ALJ "give good reasons' for the amount of weight given to a treating physician's opinion." Driggs v. Astrue, 2008 WL 818888 *3 (M.D.Pa. Mar. 25, 2008) (citing Fargnoli v. Massanari, 247 F.3d 34, 42-44 (3d Cir. 2001)); *see also* 20 C.F.R. §404.1527(d)(2).

Plaintiff contends that Judge Schwab erred in finding that the ALJ properly assessed her treating physicians. Plaintiff states, (Doc. 17, at 6-7), that Judge Schwab "failed to provide specific and legitimate reasons for rejecting the opinion of Dr. DeLeo" regarding his findings that she suffered from mental health limitations affecting her ability to work and that she had limitations with respect to her right hand. As discussed above, the court finds that Judge Schwab correctly determined that substantial evidence supported the ALJ's decision that plaintiff's mental impairments did not meet Listing 12.04 and, that the ALJ afforded proper consideration to the opinions of plaintiff's treating physicians regarding her mental impairments. Thus, the court will not revisit Dr. DeLeo's opinions regarding plaintiff's mental

impairments.

With respect to plaintiff's physical limitations, Dr. DeLeo completed a checkbox physical capacities evaluation and indicated that plaintiff could lift up to ten pounds with her left hand, she could not lift with her right hand (plaintiff was right hand dominant), and that her right hand could not be used for grasping, reaching, pushing and pulling. (TR 444). Plaintiff states, (Doc. 17, at 7), that Dr. DeLeo found in his consultative exam that she had positive Tinel's and Phalen's test on the right, compatible with carpal tunnel syndrome, and thus, Dr. DeLeo's limitations regarding her right hand had support in the record. (TR 506). However, the court agrees with defendant, (Doc. 18, at 9-10), that:

> "the record evidence shows that Plaintiff was able to grip with 24 kilograms of force on her right hand (Tr. 507). She had normal range of motion of the interphalangeal and metacarpal phalangeal joints, and normal range of dorsiflexion, palmar flexion, radial deviation, ulnar deviation, supination, and pronation, with excellent dexterity in all digits (Tr. 506). Significantly Plaintiff had 5/5 muscle strength of all muscle groups bilaterally, with no evidence of muscle fasciculation, atrophy, or weakness (Tr. 506). Despite her allegations, her physical therapist noted that her range of motion was "fairly normal," and she responded well to myofascial stretches and deep messages (Tr. 392). [footnote omitted].

(TR 101).

Judge Schwab also considered the above evidence in the record to

conclude that the "ALJ's decision to discount Dr. DeLeo's medical source statement concerning plaintiff's physical capabilities is supported by substantial evidence." (Doc. 16, at 26).

Dr. Laguna performed a psychiatric consultative examine of plaintiff on October 19, 2011, (TR 512-518), and the ALJ gave great weight to his opinion. Dr. Laguna found that plaintiff's thought processes were intact as well as her productivity, continuity and language. He also found that plaintiff's memory, recent, recent past and remote, were intact. Further, he found that plaintiff's depressive disorder did not affect her ability to understand, remember and to carry out instructions. (TR 97, 103). Plaintiff argues that Dr. Laguna's consultative exam report is inconsistent with his narrative report since it noted significant symptoms and a GAF score of 45, and that these findings showed she had marked limitations and was not able to sustain full-time employment. (Doc. 17, at 10). Plaintiff contends that Judge Schwab failed to discuss this inconsistency.

Judge Schwab clearly addressed this issue in her R&R. (Doc. 16, at 28). Judge Schwab stated:

> The ALJ gave great weight to the opinion of Dr. Laguna. Tr. 103.
> Plaintiff contends that the ALJ erred in his reliance on Dr.
> Laguna's opinion because Dr. Laguna's narrative report, in which
> he assigned Plaintiff a GAF score of 45 is inconsistent with his

22

medical source statement, in which the doctor found only slight and moderate limitations. We find that Plaintiff's argument lacks merit. An ALJ may choose which evidence to credit where evidence conflicts. Assuming arguendo that these two opinions by Dr. Laguna are actually inconsistent, the ALJ properly discounted the GAF score assessed by Dr. Laguna and explained his rationale for doing so. [TR 104]

Judge Schwab, (Id., at 28 n. 5), also noted:

As noted by the ALJ, a GAF score of 45 may reflect either (1) serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or (2) any serious impairment in social occupational or school functioning (e.g. no friends, unable to keep a job). The ALJ also noted that the medical evidence of record did not reflect that Plaintiff experienced the serious symptoms contemplated by a GAF of 45, and that prior to 2009, Plaintiff had a stable work history and was able to hold the same job for fifteen years, and despite Plaintiff's testimony that she isolated herself from the public, Plaintiff was an active member of her church. [TR 104]

The ALJ also gave great weight to the opinion of consultative examiner Dr. Goodman who examined plaintiff on July 27, 2011, and found that she had right carpal tunnel syndrome. (TR 103, 505-510). Plaintiff states that even though Dr. Goodman found that she had severe right upper extremity limitations, "the doctor overestimated her physical functional capacity and failed to note how it would significantly interfere with her ability to sustain a full-time competitive job." (Doc. 17, at 8). Plaintiff objects to the R&R in which Judge Schwab found that the ALJ's assignment of great weight to Dr.

Goodman's opinion was supported by substantial evidence. Plaintiff states that "it makes no sense for the ALJ to give Dr. Goodman's opinion great weight but not to include the restrictions assessed by Dr. Goodman." Plaintiff states that Judge Schwab did not address the alleged inconsistency in Dr. Goodman's opinion. (Id., at 8-9).

Initially, since Judge Schwab correctly detailed the findings of Dr. Goodman in her R&R, the court does not repeat them herein. (Doc. 17, at 29) (TR 103). In her R&R, Judge Schwab did in fact address plaintiff's contention that "the ALJ failed to resolve the inconsistency between Dr. Goodman's clinical observations and medical source statement with respect to the limiting effects of plaintiff's right upper extremity impairment." (Doc. 16, at 30). Judge Schwab, (Id.), correctly pointed out that Dr. Goodman found that plaintiff's only physical impairment was right carpel tunnel syndrome, and that Dr. Goodman found that plaintiff should avoid use of her right hand in repetitive activities or activities requiring strength which was consistent with his exam. (TR 103, 505-510). Judge Schwab also noted that despite plaintiff's contention that Dr. Goodman's medical source statement overestimated her physical capacity, the ALJ's RFC assessment contained "more restrictive postural restrictions due to medically determinable impairments that

24

developed *after* Dr. Goodman examined plaintiff." (Doc. 16, at 30) (emphasis in original). Thus, the court finds no merit to plaintiff's objection since the ALJ found plaintiff had more restrictions than Dr. Goodman found and incorporated these greater restrictions in his RFC assessment.

"Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment." *Ambrosini v. Asture*, 727 F.Supp.2d 414, 423 (W.D.Pa. 2010) (citing *Burnett*, 220 F.3d at 122). As stated, the court finds substantial evidence supports the ALJ's finding that three of plaintiff's physical and mental impairments, namely, status-post right cubital tunnel release, affective disorder and anxiety disorder, were severe but did not meet or medically equal one of the listed impairments. The court agrees with Judge Schwab that the ALJ properly considered all of plaintiff's documented impairments, including her degenerative joint disease of her right knee and her sleep disturbance, in combination with her three severe impairments in making his RFC assessment as he was required to do. *See Ambrosini v. Asture*, 727 F.Supp.2d at 423. Further, the ultimate decision as

to plaintiff's RFC is an administrative finding for the ALJ to make. *See Gunder v. Astrue*, 2012 WL 511936, *15 (M.D. Pa. Feb. 15, 2012) ("it is clear that an [ALJ] is responsible for making the ultimate determination regarding [RFC] and disability and need not accept a conclusory statement from a treating physician.") (citation omitted).

### D.    Whether the ALJ Erred in Relying on the VE's Testimony

Plaintiff objects to the R&R with respect to Judge Schwab's finding that the ALJ properly relied upon the testimony of the VE. Plaintiff's objection is twofold. First, plaintiff argues that Judge Schwab "failed to explain how the ALJ's RFC of alternating positions between sitting and standing every hour provides a basis for making a credible assessment as to the extent to which [her] occupational base is eroded." (Doc. 17, at 4). The record shows that the ALJ's hypothetical to the VE included a sit/stand option every hour, and the VE considered this option and testified that the hypothetical person was capable fo preforming a fruit distributor job and a conveyor line bakery worker. (TR 135-136). As such, the court agrees with defendant that "any erosion of the occupational base was considered in the VE's testimony." (Doc. 18, at 12) (citing Leech v. Barnhart, 177 Fed.Appx. 225, 227-28 (3d Cir. 2006)). Where a VE's testimony is in response to a hypothetical that fairly sets forth every

credible limitation established by the evidence of record, that testimony can be relied upon as substantial evidence supporting the ALJ's conclusion that the plaintiff is not totally disabled. Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments.").

Second, plaintiff states the Judge Schwab erred by finding that the VE's testimony regarding the sit/stand option did not conflict with the (Dictionary of Occupational Titles ("DOT"), and that it supplemented it. Plaintiff contends that the VE's opinion was different than the DOT with respect to the ability to perform jobs with a sit/stand option and that the ALJ failed to consider how her occupational base would be eroded with this option. The record shows that the ALJ asked the VE if his opinion conflicted with the DOT and the VE stated: "No conflicts, Judge, although I'll point out that the DOT does not address the issue of alternating positions within a job." (TR 140). For this issue, the VE relied upon his personal observation of the jobs he identified as well as the narrative description of the jobs in the DOT. (Id.). Thus, Judge Schwab correctly found that the VE's testimony with respect to the sit/stand option did not conflict with the DOT, and that the VE's testimony

27

supplemented the DOT.

### E.   __Whether the ALJ Erred in Evaluating the Plaintiff's Credibility__

When the court reviews the ALJ's decision, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." [Walters v. Commissioner of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997)](citing [Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)]("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")).  The ALJ found plaintiff credible with respect to her testimony about her symptoms, but he determined that her testimony with respect to intensity, persistence and the limiting effects of her symptoms were not entirely credible. (TR 100). Plaintiff argues that Judge Schwab found, (Doc. 16, at 33), that the ALJ's assessment of her panic attacks was correct and he pointed out that her treating psychiatrist found "her panic attacks had gotten milder on Prozac". However, plaintiff states that "this reason does not automatically indicate that [she] lacks symptoms or limitations stemming from her panic attacks." Plaintiff also states that her later treatment notes show that she continued to experience PTSD and anxiety symptoms, and that she

testified she became angry and suffered panic attacks when people talk about her. (Doc. 17, at 9-10) (TR 631, 722, 126).

The defendant correctly states that the July 11, 2012, record upon which plaintiff relies (TR 631) revealed that "plaintiff was pleasant, cooperative, friendly, and oriented times three; 'not as anxious as initially'; was only 'mildly' dysphoric and anxious, with no symptoms of psychosis; reported feeling better on Prozac, though she still complained of anxiousness; and showed improving judgment and insight." (Doc. 18, at 14). Insofar as plaintiff also attempts to rely upon the March 13, 2013 record from Pennsylvania State Hershey Sleep Disorders Clinic (TR 77-78), as discussed above, the court will not consider this record which is not within the relevant time period of this case.

Thus, the court finds that the ALJ properly evaluated the testimony of the plaintiff, and he was not required to entirely accept plaintiff's claims of her symptoms and limitations. *See* Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983) (providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make).

29

## IV.   CONCLUSION

In light of the foregoing, Judge Schwab's report and recommendation, (Doc. 16), is **ADOPTED** and plaintiff's appeal, (Doc. 1), is **DENIED.** A separate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Dated: March 6, 2015**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1301-01.wpd

30